## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| JORDAN WILSON, | ) Case No. |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **COMPLAINT FOR** |
| | ) **VIOLATIONS OF THE** |
| SHIFT TECHNOLOGIES, INC., GEORGE | ) **FEDERAL SECURITIES LAWS** |
| ARISON, TOBY RUSSELL, MANISH | ) |
| PATEL, JASON KRIKORIAN, ADAM NASH, | ) JURY TRIAL DEMANDED |
| VICTORIA MCINNIS, and KELLYN SMITH | ) |
| KENNY, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff Jordan Wilson ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1.      Plaintiff brings this action against Shift Technologies, Inc. ("Shift" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the proposed merger of the Company with CarLotz, Inc. ("CarLotz").[1]

2.      On August 9, 2022, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Shift Remarketing Operations, Inc. ("Merger Sub"), a wholly

---

[1] The proposed merger of the Company and CarLotz described herein is referred to as the "Proposed Transaction."

owned subsidiary of Shift, and CarLotz.[2]  The Merger Agreement provides that each outstanding share of CarLotz common stock will be converted into the right to receive 0.692158 of a share of Shift common stock.[3]

3.     The Company's corporate directors subsequently authorized the November 8, 2022, filing of the materially incomplete and misleading Form 424B3 Prospectus (the "Prospectus")  with the SEC.  The Prospectus, which recommends that Company stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision.  Defendants authorized the issuance of the false and misleading Prospectus in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     It is imperative that the material information omitted from the Prospectus is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights, among other things.[4]

5.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the

---

[2] The Merger Agreement requires Shift to issue more than 85.7 million shares of its common stock (the "Share Issuance").  Nasdaq listing rules require member companies obtain stockholder approval before issuing 20% or more of their outstanding stock.  Because it is a Nasdaq listed company, Shift must therefore obtain stockholder approval of the Share Issuance.

[3] Upon completion of the Proposed Transaction (a) former CarLotz stockholders are expected to own approximately 49.99% of the issued and outstanding shares of Shift common stock and approximately 48.12% of the outstanding shares of Shift common stock on a fully diluted and as-converted to Shift common stock basis; and (b) current Shift stockholders are expected to own approximately 50.01% of the issued and outstanding shares of Shift common stock and approximately 51.88% of the outstanding shares of Shift common stock on a fully diluted and as-converted to Shift common stock basis.

[4] The Special Meeting at which stockholders are asked to approve the Proposed Transaction currently is scheduled for December 13, 2022.

event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.      Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9.      Plaintiff is, and has been at all times relevant hereto, the owner of Shift common stock.

10.     Defendant Shift is a Delaware corporation with its principal executive offices located at 290 Division Street, Suite 400, San Francisco, California 94103.  Shift's shares trade on the Nasdaq Capital Market under the ticker symbol "SFT."  Founded in 2013, Shift, together with its subsidiaries, provides an ecommerce platform for buying and selling used cars.  The Company operates in two segments: Retail and Wholesale.  It engages in the retail sale of used vehicles through its platform that enables mobile digital transaction, such as at-home car searching, scheduling an on-demand test drive, and purchasing at home or at the preferred site

of a test drive, as well as provides financing and services.  Shift also provides value-added products, such as vehicle service contracts, guaranteed asset protection waiver coverage, wheel and tire coverage, prepaid maintenance plans, and appearance protection plans.  The Company is also involved in the sale of used vehicles through wholesale auctions or directly to a wholesaler.

11.     Defendant George Arison ("Arison") is a co-founder of Shift and is and has been Chairman of the Board and a director of the Company at all times relevant hereto.

12.     Defendant Toby Russell is a co-founder of Shift and is and has been a director of the Company at all times relevant hereto.

13.     Defendant Manish Patel is and has been a director of the Company at all times relevant hereto.

14.     Defendant Jason Krikorian is and has been a director of the Company at all times relevant hereto.

15.     Defendant Adam Nash is and has been a director of the Company at all times relevant hereto.

16.     Defendant Victoria McInnis is and has been a director of the Company at all times relevant hereto.

17.     Defendant Kellyn Smith Kenny is and has been a director of the Company at all times relevant hereto.

18.     Defendants identified in paragraphs 11-17 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

19.     On August 9, 2022,  Shift and CarLotz jointly announced in relevant part:

SAN FRANCISCO and RICHMOND, Va., Aug. 09, 2022 (GLOBE NEWSWIRE) -- Shift Technologies, Inc. (Nasdaq: SFT), a leading end-to-end ecommerce platform for buying and selling used cars, and CarLotz, Inc. (Nasdaq: LOTZ), a leading consignment-to-retail used vehicle marketplace, announced today that they have entered into a definitive agreement to combine in a stock-for-stock merger.  The combined company will continue to trade on Nasdaq under the ticker SFT.

The combination will create the destination for the best online and in-person used car purchasing experience, allowing the customer to seamlessly shop the broadest assortment of used vehicle inventory, and complete the transaction however they prefer.

The merger brings together the most profitable assets of both companies.  The two businesses have complementary geographies, with Shift's footprint concentrated on the West Coast, while CarLotz has built a strong presence in the mid-Atlantic region.  CarLotz will be able to leverage Shift's proprietary inventory acquisition engine and at-home delivery offering to obtain differentiated inventory and expand its geographic footprint, while Shift will be able to leverage CarLotz's presence to scale its dealer marketplace on the East Coast.

"The Shift and CarLotz teams have admired each other and our respective businesses for quite some time.  We've always seen a considerable amount of strategic and cost synergies with a combined entity," said George Arison, Shift's Co-Founder and CEO.  "We are strongly convinced that the merger will put us in a position to pursue a profitable future.  As such, this is a transformative moment in Shift's history by enabling us to advance our vision to be the end-to-end destination for car ownership that controls its own destiny."

"While this is an exciting day for both companies, the merging of Shift and CarLotz will be most beneficial to consumers looking to buy or sell a used car," said Lev Peker, CEO of CarLotz.  "Shift's technology and consumer sourcing abilities combined with our consignment and retail remarketing expertise will provide one extraordinary, omnichannel experience."

"We see immense opportunity in combining Shift's proprietary acquisition engine, which excels in buying cars from customers, with CarLotz's unique consignment relationships to create a truly differentiated inventory strategy,"

said Jeff Clementz, Shift's President and incoming CEO.  "There's also potential to leverage Shift's back-end technology and online checkout flow at CarLotz's retail locations, to drive significant process and cost efficiencies."

Under the terms of the merger agreement, CarLotz shareholders are expected to receive approximately 0.692158 shares of Shift common stock for each share of CarLotz common stock.  The actual exchange ratio will be adjusted at the closing based on Shift's issued and outstanding shares prior to the effective time of the merger, relative to the fully diluted CarLotz shares prior to the effective time of the merger.   Based on the expected exchange ratio, upon the closing of the merger Shift's then-current equity holders will own approximately 52.9% of the combined company, and CarLotz's then-current equity holders will own approximately 47.1% of the combined company, calculated on a fully diluted basis.  We expect the transaction to close in Q4 2022 subject to CarLotz's and Shift's shareholders' approvals and other customary and regulatory approvals.

Shift is advised by Centerview Partners and Cohen & Company Capital Markets, a division of J.V.B. Financial Group, LLC.  as financial advisor and Jenner & Block LLP as legal counsel.  CarLotz is advised by William Blair & Company as financial advisor and Freshfields Bruckhaus Deringer LLP as legal counsel.

**The Materially Incomplete and Misleading Prospectus**

20.     The Board caused to be filed the materially incomplete and misleading Prospectus with the SEC on November 8, 2022.  The Prospectus, which recommends that Shift stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning the Company's financial forecasts and the financial analyses that support the fairness opinion provided by the Company's financial advisor Centerview Partners LLC ("Centerview").

*Material Misrepresentations and/or Omissions Concerning the Company's Financial Forecasts and  Centerview's Financial Analysis*

21.     The Prospectus fails to disclose material information concerning Shift's financial forecasts, including Shift's projected unlevered free cash flows for the years ending

December 31, 2022 through December 31, 2031, and the underlying projection line items.[5]

22.     The Prospectus further fails to disclose CarLotz's projected unlevered free cash flows for the years ending December 31, 2022 through December 31, 2031, utilized by Centerview in connection with its *Discounted Cash Flow Analysis* of CarLotz, and the underlying projections line items.

23.     The Prospectus also fails to disclose any CarLotz projections "with adjustments made by Shift management."[6]

24.     The Prospectus fails to disclose any CarLotz projections for the years 2027 through 2031.[7]

25.     The Prospectus fails to disclose material information concerning Centerview's financial analyses.

26.     With respect to Centerview's *Discounted Cash Flow Analysis* of Shift, in addition to the unlevered free cash flows utilized, the Prospectus fails to disclose: (a) the projection metric to which exit multiples were applied to derive the terminal value and quantification thereof; (b) Shift's terminal values; (c) the estimated present value of future tax benefits available to Shift from net operating losses carried forward; (d) Shift's net debt; and (e) Shift's fully-diluted shares outstanding.

---

[5] The Company's financial advisor, Centerview Partners LLC ("Centerview") used these financial forecasts, *inter alia*, in connection with the *Discounted Cash Flow Analysis* ("DCFA") it performed. Notably, financial forecasts such as these have been held to be among the most important and material information a stockholder can have when evaluating the proposed consideration in a merger. *See, e.g.*, *Brown v. Brewer*, No. CV 06-3731-GHK (SHx), 2010 U.S. Dist. LEXIS 60863, at *70 (C.D. Cal. June 17, 2010).

[6] *See* Prospectus at 86.

[7] Centerview utilized projections for this period in connection with the analysis underlying its fairness opinion.

27.     With respect to the *DCFA* of CarLotz performed by Centerview, the Prospectus fails to disclose: (a) the projection metric to which exit multiples were applied to derive the terminal value and quantification thereof; (b) CarLotz's terminal values; (c) the estimated present value of future tax benefits available to CarLotz from net operating losses carried forward; (d) the value of CarLotz's net cash and cash equivalents; and (e) CarLotz's fully diluted shares outstanding.

28.     With respect to the *Selected Comparable Public Companies Analysis* of Shift performed by Centerview, the Prospectus fails to disclose: (a) the individual multiples and financial metrics for each of the selected companies analyzed by Centerview; (b) Shift's net debt; and (c) Shift's fully diluted shares outstanding.

29.     With respect to the *Selected Comparable Public Companies Analysis* of CarLotz performed by Centerview, the Prospectus fails to disclose: (a) the individual multiples and financial metrics for each of the selected companies analyzed by Centerview; (b) CarLotz's net cash and cash equivalents; and (c) CarLotz's fully diluted shares outstanding.

30.     The omission of the above-referenced information renders statements in the "Shift Unaudited Prospective Financial Information," "CarLotz Unaudited Prospective Financial Information," "Opinion of Shift's Financial Advisor" and "Background of the Merger" sections of the Prospectus materially incomplete and misleading in contravention of the Exchange Act.

31.     Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of the Company will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and SHIFT**

32.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

33.     The Individual Defendants disseminated the false and misleading Prospectus, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9.  Shift is liable as the issuer of these statements.

34.     The Prospectus was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Prospectus.

35.     The Individual Defendants were at least negligent in filing the Prospectus with these materially false and misleading statements.

36.     The omissions and false and misleading statements in the Prospectus are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Prospectus and in other information reasonably available to stockholders.

37.     The Prospectus is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

38.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

39.     Because of the false and misleading statements in the Prospectus, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

40.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

41.     The Individual Defendants acted as controlling persons of Shift within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Shift and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Prospectus, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

42.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Prospectus alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

43.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations

as alleged herein, and exercised the same.   The Prospectus contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Prospectus.

44.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

45.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of the Company, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Company stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  November 22, 2022                    **LONG LAW, LLC**

                                      By:  */s/ Brian D. Long*
                                           Brian D. Long (#4347)
                                           3828 Kennett Pike, Suite 208
                                           Wilmington, DE 19807
                                           Telephone: (302) 729-9100
                                           Email: BDLong@LongLawDE.com

                                           *Attorneys for Plaintiff*